STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-05-019

AUG 1 2 2005

WILLIAM R. BODACK,

Plaintiff

v.

ORDER
AND
DECISION

THE TOWN OF OGUNQUIT, et al.,

Defendants

After extensive proceedings which began in 2002, the Ogunquit Planning Board issued its findings of fact, conclusions and decision on March 14, 2005 approving an amended subdivision proposal submitted by Ogunquit Village Estates, LLC. The approved proposal would create a cluster subdivision for adults aged 55 and over on both sides of Berwick Road containing 35 single-family homes. An appeal has been taken by William Bodack who owns a nearby home on Berwick Road. The parties have briefed and argued the appeal.

The plaintiff has challenged portions of the decision of the Planning Board regarding traffic, a waiver of access requirements, and ownership of open space. The traffic issues are central to the appeal.

The proposed subdivision would enter Berwick Road which then enters Route 1 in Ogunquit. The additional traffic from the proposed development will not be extensive but will enter Route 1 at an often very congested point. As part of its review the Board received and requested traffic studies and approached the proposal with care. In its conclusions from its decision dated March 14, 2005 the Board found,

The General Standards of Article 8 of the OZO have been met. The Board particularly focused on the issue of traffic impacts, particularly the standards of OZO Article 8.13, as well as the OSR, Article 1.1.5 While understanding that the project will cause an increase in traffic congestion, the majority of the Board did not feel this would be an unreasonable impact and acknowledged that the applicant should not be held responsible for the existing problems with Route 1 intersections.

By statute a municipality must consider the following before granting subdivision approval: "The proposed subdivision will not cause unreasonable highway or public road congestion or unsafe conditions with respect to the use of the highways or public roads existing or proposed." See 30-A M.R.S.A. §4404(5). Additionally, Article 10 of the Ogunquit Subdivision Review Standards imposes street design and construction standards. There is substantial evidence in the record to support the separate finding by the Board that the requirements of Article 10 were met and the implicit finding that the statutory requirement was met. What is determinative is whether the conclusion that the requirements of Article 8.13 of the Ogunquit Zoning Ordinance were met is legally correct.

Article 8.13.A.3 states as follows:

Provision shall be made for vehicular access to all development and circulation upon the lot in such a manners as to safeguard against hazards to traffic and pedestrians in the street and within the development, to avoid traffic congestion on any street and to provide safe and convenient circulation on public streets and within the development. More specifically, access and circulation shall also conform to the following standards and the design criteria below. ... 3. The street giving access to the lot and neighboring streets, which can be expected to carry traffic to and from the development, shall have traffic carrying capacity and be suitably improved to accommodate the amount and types of traffic generated by the proposed use. No development shall increase the volume:capacity ratio of any street above 0.8 nor reduce the street's Level of Service to "D" or below.

There are two questions to be answered. The first question is whether Article 8.13.A.3 applies. It appears that the Board found that it did when it stated that it "particularly focused on the issue of traffic impacts, particularly the standards of OZO

2

(Ogunquit Zoning Ordinance) Article 8.13." This conclusion, that Article 8.13.A.3 applies, is correct because the Zoning Ordinance states at Article 1.5 that if the Zoning Ordinance conflicts with any other ordinance "the most restrictive or that imposing the higher standards shall govern."

The second question is whether the Board was correct when it determined that the requirements of Article 8.13 were met. Here the board was not. It found, "While understanding that the project will cause an increase in traffic congestion, the majority of the Board did not feel this would be an unreasonable impact and acknowledged that the applicant should not be held responsible for the existing problems with Route 1 intersections." In reaching this conclusion the Board erroneously ignored the specific requirements of Article 8.13.A.3 and may have incorrectly interpreted one or perhaps two related decisions of the Maine Supreme Judicial Court.

The evidence before the board indicated that the Route 1 intersection no longer had full "traffic carrying capacity" and, more importantly, the development, which the Board correctly found "will cause an increase in traffic congestion," would add to the congestion where the volume: capacity ratio was already above 0.8 and the Level of Service was at D or below. Briefly stated, the project would make an unacceptable situation slightly worse. The Ogunquit ordinance does not allow a subdivision where substandard traffic conditions already exist and will be made worse.

In *Thacker v. Konover Development Corporation*, 2003 ME 30, 818 A.2d 1013 owners of an existing Arby's restaurant challenged the decision of the Topsham Planning Board to approve a nearby large commercial subdivision. The Law Court held, at ¶12, that, "A reduction in the level of service of Arby's access drive during peak hours does not, however, constitute, 'unreasonable highway or public road congestion or unsafe conditions.'", quoting from 30-A M.R.S.A. §4404(5). The Law Court found that the

3

Board was not in error in concluding that the statutory requirements found at 30-A M.R.S.A. §4404(5) were met. The current case differs in that Ogunquit has a separate ordinance at Article 8.13.A.3, which adds specific quantitative requirements to the general qualitative statutory consideration of "unreasonable" congestion or "unsafe" conditions. While the Ogunquit Planning Board could conclude that the statutory requirements were met, it could not conclude that the separate specific standards regarding volume: capacity ratios or Level of Service had been met.

In the earlier case of *Grant's Farm Associates v. Town of Kittery*, 554 A.2d 799 (Me. 1989) a developer appealed from the denial of approval on five grounds, one of which was traffic conditions. The Law Court, at 801, referred to the then existing codification of current 30-A M.R.S.A. §4404(5) and upheld the denial of subdivision approval. The Law Court listed factors that could be considered in making a determination regarding whether "reasonableness" was met. The Kittery case did not involve a separate ordinance like the Ogunquit ordinance that imposed additional quantifiable conditions beyond those imposed by state law.

The Planning Board was incorrect in considering whether the additional congestion would be an "unreasonable impact." If only state law and the *Thacker* and *Grant's Farm* cases applied then the Board could have made such a determination. Since Article 8.13.A.3 exists, the proper question is whether or not the requirement of that article was met. Since the requirements were not met, the Board was not permitted to approve the subdivision.

The plaintiff has also challenged the granting of a waiver from the access requirements. I do not find that there were "special circumstances of a particular plan", See Subdivision Review Standards, Article 12.2, that would allow for a waiver. The Board could simply have told the applicant to either find another access or reduce the

4

size of the development by a lot so that the more stringent access requirements for larger developments would not apply.

Lastly, I find no error in the Board's determinations regarding ownership of any common open space. Zoning Ordinance Article 9.6.A.8.

The entry is:

The approval of the subdivision application of Ogunquit Village Estates, LLC by the Ogunquit Planning Board on February 28, 2005 as stated in its written findings of fact, conclusions and decision of March 14, 2005 is vacated.

Dated:          August 11, 2005

Paul A. Fritzsche
Justice, Superior Court

PLAINTIFF:
JOHN C BANNON ESQ
MURRAY PLUMB & MURRAY
PO BOX 9785
PORTLAND ME   04104-5085

DEFENDANT-TOWN OF OGUNQUIT
PATRICK J SCULLY ESQ
BERNSTEIN SHUR SAWYER & NELSON
PO BOX 9729
PORTLAND ME   04104-5029

DEFENDANTS-OGUNQUIT VILLAGE ESTATES, LLC, THE SEAFARER DEV. CORP. & STEPHEN HALLETT
DURWARD W PARKINSON ESQ
BERGEN & PARKINSON
62 PORTLAND RD
KENNEBUNK ME   04043-6658

5